Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mirta García López y otros<br><br>    Recurridos<br><br>       v.<br><br>Estado Libre Asociado de<br>Puerto Rico y otros<br><br>    Peticionarios | Certiorari<br><br>2012 TSPR 69<br><br>185 DPR ____ |

Número del Caso: CC-2011-610


Fecha: 10 de abril de 2012


Tribunal de Apelaciones:

      Región Judicial Caguas, Panel IX


Oficina de la Procuradora General

      Lcda. Irene Zoroeta Kodesh
      Procuradora General

      Lcda. María C. Umpierre Marchand
      Procuradora General Auxiliar

      Lcda. Karal Z. Pacheco Alvarez
      Procuradora General Auxiliar


Abogados de la Parte Recurrida:

      Lcdo. Rafael A. Nadal Arcelay
      Lcdo. Edgardo Pabón Rodríguez
      Lcda. Zahira A. Maldonado Molina


Materia:  Injuction Preliminar y Permanente


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mirta García López y Otros

    Recurrida

      v.

Estado Libre Asociado de
Puerto Rico y otros

    Peticionarios

*Certiorari*

CC-2011-610

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 10 de abril de 2012.

Comparece ante nos el Gobierno de Puerto Rico, *et als*., y nos solicita que revoquemos una Resolución interlocutoria emitida por el Tribunal de Apelaciones. Mediante esta, el foro apelativo intermedio concedió siete (7) días a la parte recurrida de epígrafe para que se expresara en cuanto a una Moción en Auxilio de Jurisdicción presentada por la parte peticionaria ante ese foro.

El caso de autos nos da la oportunidad de expresarnos en cuanto a la naturaleza de las mociones en auxilio de jurisdicción en nuestro ordenamiento jurídico. En particular, debemos resolver si, ante una moción en auxilio de jurisdicción en la cual se solicita la paralización

de los efectos de un *injunction* en un caso de alto interés público, el Tribunal de Apelaciones abusa de su discreción al conceder términos a las partes para expresarse sin antes evaluar si la moción en auxilio de jurisdicción presentada es meritoria de su faz.

Previo a atender esta controversia, pasamos a exponer los hechos que dieron génesis al caso de autos.

I

El 17 de mayo de 2011 los recurridos de epígrafe, quienes son maestros y padres de estudiantes de la Escuela Superior Luis Muñoz Iglesias del Municipio de Cidra, recibieron una notificación del entonces Secretario de Educación Jesús Rivera Sánchez en la cual se les informó que, a tenor con el procedimiento establecido en la Carta Circular Número 4-2009-2010, se procedería con el cierre de su escuela efectivo el 31 de mayo de 2011. A su vez, en la misiva se notificó que las operaciones de ese plantel escolar serían consolidadas con la Escuela Superior Ana J. Candelas del mismo municipio.

Inconformes con ese proceder administrativo, el grupo de padres y maestros (en adelante los recurridos) presentaron el 1 de junio de 2011 un pleito de interdicto preliminar ante el Tribunal de Primera Instancia, Sala Superior de Caguas. En este, alegaron que la determinación de cerrar y consolidar con otra su escuela era una determinación arbitraria y caprichosa que violentaba sus

derechos constitucionales a un debido proceso de ley y a la igual protección de las leyes.

En síntesis, los recurridos sostuvieron que no procedía el cierre del plantel escolar ya que el Departamento de Educación no siguió el procedimiento establecido en la Carta Circular Número 4-2009-2010, el cual requería que, previo a ordenar el cierre de una escuela, el Director Regional debía notificar al Consejo Escolar sobre la evaluación de cierre escolar que se estaría realizando, de modo que ese organismo pudiera expresarse en cuanto a este y emitiera una recomendación al respecto.

Así las cosas, el Tribunal de Primera Instancia pautó una vista inicial para el 9 de junio de 2011. Ese mismo día, el Gobierno de Puerto Rico presentó una Moción de Desestimación en la cual argumentó que conceder un *injunction* en el caso de autos violentaría el principio de separación de poderes, ya que se daría paso a una intromisión indebida con la discreción inherente del Poder Ejecutivo. A su vez, el Gobierno alegó que el pleito incoado por los recurridos no cumplía con los requisitos esbozados en la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. V R.57.7, ni con lo enunciado en el Art. 658 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 3524.

En cuanto a las alegadas violaciones al procedimiento dispuesto en la Carta Circular Número 4-2009-2010, el

Gobierno argumentó que se trataba de directrices generales y que la propia Carta establecía que en nada se alteraba la facultad del Secretario de Educación para cerrar escuelas aunque no hubiese recibido recomendaciones al respecto.

Por su parte, los recurridos presentaron oposición a la Moción de Desestimación presentada por el Gobierno y, el 20 de junio de 2011, el foro de instancia denegó esta última. Así las cosas, citó a las partes para la vista de *injunction* preliminar a celebrarse tres (3) días después.

En esa vista, los recurridos presentaron el testimonio de un maestro de matemáticas de la Escuela, así como la misiva del 17 de mayo de 2011 y la Carta Circular Número 4-2009-2010. Acto seguido, el Gobierno presentó una Solicitud al Amparo de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. V R.39.2, y argumentó que los recurridos no presentaron alegaciones suficientes que justificaran la concesión de un remedio. El Gobierno sostuvo que los recurridos no sufrirían un daño que justificara la emisión de un *injunction* a su favor ya que todos los estudiantes y maestros serían reubicados a la Escuela Superior Ana J. Candelas ubicada en el mismo municipio. El foro de instancia denegó ese petitorio.

Posteriormente, el 28 de junio, notificada el 1 de julio de 2011, el Tribunal de Primera Instancia emitió una Resolución en la cual expidió un *injunction* provisional y ordenó al Departamento de Educación a dejar sin efecto el

cierre de la Escuela Superior Luis Muñoz Iglesias. Entendió el foro de instancia que, al no cumplir con las directrices de la Carta Circular Núm. 4 2009-2010, el Departamento de Educación violentó los derechos constitucionales de los recurridos. A su vez, determinó que se les causaría a estos un daño irreparable al cerrarse su plantel escolar.

Inconforme, el Gobierno de Puerto Rico presentó el 15 de julio de 2011 un recurso de *certiorari* ante el Tribunal de Apelaciones. Junto con este, presentó una Moción en Auxilio de Jurisdicción en la cual peticionó que, **dado el alto interés público del caso y el hecho que el nuevo semestre escolar estaba a solo días de comenzar**, se dejara sin efecto inmediatamente el *injunction* provisional emitido por el Tribunal de Primera Instancia mientras se dilucidaba el recurso de *certiorari*. Ese mismo día, en horas de la tarde, el foro apelativo intermedio emitió una Resolución en la cual, **sin atender los asuntos esbozados en la moción en auxilio de jurisdicción que tenía ante sí**, le concedió siete (7) días a la parte recurrida para que expresara su posición en cuanto a la petición del Gobierno y el recurso de *certiorari* presentado.

Insatisfecho con ese proceder, el 21 de julio de 2011 el Gobierno de Puerto Rico presentó una petición de *certiorari* acompañada de una Moción en Auxilio de Jurisdicción ante este Tribunal y señaló la comisión del siguiente error:

> **Erró el Tribunal de Apelaciones al no paralizar la efectividad del *injunction* emitido por el Tribunal de Instancia, mientras dilucida la petición de *certiorari* que fue presentada ante sí.**

Luego de analizar la moción, el 22 de julio de 2011 procedimos a declararla Ha Lugar, paralizando así los efectos del *injunction* emitido por el Tribunal de Primera Instancia. A su vez, emitimos a los recurridos una Orden de Mostrar Causa por la cual no debíamos revocar la Resolución emitida por el Tribunal de Apelaciones.

Los recurridos comparecieron el 1 de agosto de 2011, por lo cual estamos en posición de resolver sin ulterior trámite.

II

A.

Una moción que solicita a un tribunal un remedio en auxilio de su jurisdicción es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia. *Pantoja Oquendo v. Mun. de San Juan*, res. el 9 de junio de 2011, 2011 T.S.P.R. 82, pág. 7, 2011 J.T.S. 87, 182 D.P.R. ___ (2011); *San Gerónimo Caribe Project v. A.R.Pe.*, 174 D.P.R. 640, 654 (2008); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 D.P.R. 656, 678 (1997). Es decir, se trata de un remedio en equidad que recae en la sana discreción de los tribunales, y que "goza de

características afines a otros de similar naturaleza, como lo son el entredicho provisional y el injunction preliminar". *Misión Ind. P.R. v. J.P. y A.A.A.*, *Íd.*

En nuestro ordenamiento se ha reconocido la facultad de los tribunales apelativos para emitir este tipo de órdenes en equidad. Así, por ejemplo, la Regla 79 del Tribunal de Apelaciones en su inciso (A) establece, *inter alia*, que:

> (A) Para hacer efectiva su jurisdicción en cualquier asunto pendiente ante sí, el Tribunal de Apelaciones podrá expedir cualquier orden provisional, la cual será obligatoria para las partes en la acción, sus oficiales, agentes, empleados(as) y abogados(as), y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. 4 L.P.R.A. Ap. XXII-B R.79.

La facultad inherente de este Foro para emitir órdenes en auxilio de jurisdicción también se encuentra recogida en nuestro Reglamento. Particularmente, la Regla 28 establece, en lo pertinente, que:

> (a) El Tribunal podrá expedir una orden provisional en auxilio de su jurisdicción cuando sea necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración.

> A los fines de esta regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente para evitar alguna consecuencia adversa que afecte su jurisdicción o que pueda causar un daño sustancial a una parte mientras resuelve el recurso. *In re: Reglamento del Tribunal Supremo*, 2011 T.S.P.R. 174, 183 D.P.R. ___ (2011), pág. 59.[1]

---

[1] Tan temprano como en 1946 ya se reconocía en el Reglamento de este Tribunal la facultad de expedir "injunctions en auxilio de su

Debido a su linaje basado en principios de equidad y de discreción inherente del poder judicial, hemos dicho que el remedio que ofrece esta Regla es uno "excepcional de trascendental importancia en **casos donde existan situaciones de verdadera emergencia**". *Marrero Rivera v. Dolz*, 142 D.P.R. 72, 73 (1996)(Resolución)(Énfasis suplido). Así, al invocar la facultad discrecional de los tribunales apelativos, no puede utilizarse este remedio para casos o situaciones que no conlleven el nivel de importancia adecuado.

Estas disposiciones provistas por nuestro ordenamiento son de naturaleza similar al poder reconocido a los tribunales federales en Estados Unidos. A manera de enriquecer nuestro análisis, conviene analizar brevemente la figura análoga de la moción en auxilio de jurisdicción en la esfera federal.

B.

En esa jurisdicción de *common law*, se encuentra estatuido el *All Writs Act*, 28 U.S.C. sec. 1651. Este estatuto federal establece que "el Tribunal Supremo y todas las cortes establecidas por Ley del Congreso podrán emitir todos los recursos necesarios o apropiados en auxilio de sus respectivas jurisdicciones y que sean acordes con los usos y principios del Derecho". *Íd*. (Traducción suplida).

---

jurisdicción apelativa". Regla 15a, Reglamento del Tribunal Supremo de Puerto Rico de 1946.

La doctrina federal establece que el *All Writs Act,* supra*,* fue aprobado con el propósito de "asegurar que todos los recursos y remedios disponibles para las cortes del *common law* estén disponibles para las cortes federales a menos que su uso esté prohibido por estatutos o reglas". Moore's Federal Rules Pamphlet sec. 1651.2. (Traducción suplida).

Se ha reconocido que esta disposición permite a los tribunales federales emitir cualquier tipo de orden que sea en auxilio de su jurisdicción apelativa, inclusive *injunctions*. 19 Moore's Federal Practice sec. 204.01[2][c]. No obstante, la facultad de emitir órdenes en auxilio de su jurisdicción apelativa no significa que los tribunales apelativos federales puedan, a través de ese mecanismo, expandir su jurisdicción más allá de las fronteras constitucionales y estatutarias. *Clinton v. Goldsmith*, 526 U.S. 529 (1999); *Pennsylvania Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34 (1985).

A su vez, y similar a nuestro ordenamiento, se ha reconocido en la esfera federal que la expedición de un *injunction* al amparo del *All Writs Act,* supra*,* es una medida que descansa en la sana discreción del tribunal apelativo y que debe reservarse solo para casos de verdadera urgencia en donde los derechos en controversia sean indiscutiblemente claros. *Brown v. Gilmore*, 533 U.S. 1301 (2001) (Rehnquist, J.P., actuando como juez de

circuito); *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Com'n*, 479 U.S. 1312 (1986) (Scalia, J., actuando como juez de circuito).[2]

De lo anterior podemos apreciar que en ambas jurisdicciones los mecanismos que proveen a los tribunales la facultad de emitir órdenes en auxilio de su jurisdicción se amparan en principios de equidad. A la vez, van dirigidos a la discreción de cada tribunal y su uso debe reservarse para casos de verdadera urgencia.

C.

Cónsono con estos principios, en ocasiones anteriores hemos expresado que el uso incorrecto del mecanismo de la moción en auxilio de jurisdicción "trastoca y entorpece injustificadamente el funcionamiento interno de este Tribunal, lo cual tiene un efecto detrimental en la administración expedita de la justicia". *Marrero v. Dolz*, *supra*, pág. 73. A tales efectos, hemos establecido que los abogados que abusen de este mecanismo extraordinario estarán sujetos a la imposición de sanciones. *Marrero v. Dolz*, *supra*; Regla 28 del Tribunal Supremo de Puerto Rico, *supra*.

Por otra parte, hemos reiterado la importancia de que el Tribunal de Apelaciones atienda con premura las

---

[2] A diferencia de este Tribunal, el Reglamento del Tribunal Supremo de Estados Unidos permite que las mociones que solicitan la paralización de los efectos de una Sentencia sean presentadas a uno de sus jueces individualmente. Este puede disponer del asunto sin referirlo al Pleno del Tribunal. Véase Regla 23 del Tribunal Supremo de Estados Unidos, *U.S.Sup.Ct. Rule 23*, 28 U.S.C.

mociones en auxilio de jurisdicción que ante este sean presentadas. *Pantoja Oquendo v. Mun. de San Juan*, supra. A esos efectos, hemos colegido que en casos de alto interés público el Tribunal de Apelaciones debe actuar con celeridad y abusa de su discreción al conceder términos a las partes para que se expresen en cuanto a los fundamentos de una moción en auxilio de jurisdicción si con ese proceder se fomenta un impermisible panorama de incertidumbre. *Pantoja Oquendo v. Mun. de San Juan*, supra, pág. 15.

III

Analizada la naturaleza de la moción en auxilio de jurisdicción en nuestro ordenamiento, pasemos a discutir los remedios que hemos reconocido pueden ser concedidos a las partes que hacen uso de este mecanismo extraordinario.

Comenta el tratadista Rafael Hernández Colón que, en atención a una moción en auxilio de jurisdicción, el Tribunal de Apelaciones

> puede expedir la orden que sea necesaria para mantener un estado de cosas entre los litigantes y el objeto del pleito que le permita llevar a cabo la revisión de la actuación del [Tribunal de Primera Instancia] . . . y dictar una sentencia que sea eficaz para proteger los derechos de la parte que recurre al [Tribunal de Apelaciones]. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Lexis-Nexis, 5ta Ed., 2010, pág. 496.

Cónsono con lo anterior, desde *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978) habíamos reconocido que los tribunales apelativos están revestidos de

autoridad para tomar medidas que, en auxilio de su jurisdicción, tengan el efecto de **suspender los efectos** de la Sentencia y detener su ejecución. Para poder prevalecer en su petitorio, establecimos que la parte que interesa se suspendan los efectos de una Sentencia debe cumplir con los siguientes requisitos: (a) presentar un caso fuerte con probabilidades de prevalecer en los méritos; (b) que sufrirá un daño irreparable si no se detiene la ejecución de la Sentencia; (c) que la paralización no causará daño sustancial a las demás partes; y (d) que no se verá perjudicado el interés público.[3] Estos requisitos han sido consistentemente reiterados por nuestra jurisprudencia. Véase *Pantoja Oquendo v. Mun. de San Juan*, supra*,* y *Plaza Las Américas v. N & H*, 166 D.P.R. 631, 642-643 (2005).

A su vez, estos requisitos son de igual aplicación cuando una parte recurre al foro apelativo y solicita la paralización de los efectos de un *injunction*. *Plaza Las Américas v. N & H,* supra. A tales efectos, la Regla 57.7 de Procedimiento Civil establece que:

> (a) Cuando una parte apele o recurra de una orden o sentencia que conceda, deje sin efecto o deniegue un *injunction*, el tribunal de instancia, en el ejercicio de su discreción, podrá suspender, modificar, restituir o conceder un *injunction*

---

[3] Como hemos dicho en otras ocasiones, "existe cierta simetría entre los principios que regulan la concesión del *injunction* y los que regulan sus efectos post apelativos". *Plaza Las Américas v. N & H,* 166 D.P.R. 631, 644 (2005). Así, la norma reconocida en *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978) refleja los requisitos para la expedición de un *injunction*, tanto preliminar como permanente. Véase *Plaza Las Américas v. N & H,* supra; *Mun. de Loíza v. Sucns. Súares et al.,* 154 D.P.R. 333 (2001)*; Pérez Vda. Muñiz v. Criado, 151 D.P.R. 355, 383* esc. 11 (2000).

mientras dilucida el recurso interpuesto bajo aquellos términos relativos a fianza y demás que estime adecuados para proteger el interés público.

(b) **Lo dispuesto en esta regla no restringe la facultad del tribunal de apelación o de uno(a) de sus jueces o juezas para paralizar los procedimientos mientras se dilucida el recurso interpuesto** o para suspender, modificar, restituir o conceder un *injunction* mientras esté pendiente la apelación o *certiorari*, o para dictar cualquier orden adecuada para preservar el status quo o la efectividad de la sentencia que habrá de emitirse en su día.  No obstante, cuando una parte recurra de una orden que deje sin efecto o deniegue un entredicho provisional, el tribunal de apelación sólo podrá emitir, mientras dilucida el recurso interpuesto, una orden provisional ex parte que no debe excederse del término de diez (10) días que caracteriza a dicho recurso extraordinario, salvo que el tribunal expresamente prorrogue dicho término en conformidad con la Regla 57.1 (Énfasis suplido). 32 L.P.R.A. Ap. V. R. 57.7.

Finalmente, y cónsono con el principio que ante una moción en auxilio de jurisdicción los tribunales pueden conceder cualquier remedio que en equidad proceda, hemos inclusive ordenado al Tribunal de Apelaciones a resolver controversias complejas y de alto interés público en un término determinado. Véase *U. Ciencias Méd. S.J. Bautista v. E.L.A.,* 141 D.P.R. 403, 405 (1996)(Sentencia).[4]

---

[4] En *U. Ciencias Méd. S.J. Bautista v. E.L.A.*, 141 D.P.R. 403 (1996) se dio una situación similar a la de autos, en la cual el foro apelativo intermedio, ante una moción en auxilio de jurisdicción, se negó a paralizar los efectos de un *injunction* emitido por el Tribunal de Primera Instancia en un caso de interés público. En esa ocasión dijimos que el "foro apelativo debió acoger la moción en auxilio de su jurisdicción y decretar la paralización de la referida prohibición hasta tanto resolviera el recurso presentado. **El balance de intereses y el derecho vigente así lo aconsejan**". *Íd.* pág. 404 (Énfasis suplido). Por ende, y ante el alto interés público presentado, ordenamos al Tribunal de Apelaciones a resolver la controversia planteada en un término de nueve (9) días.

IV

A.

Conforme a los principios anteriormente esbozados, procedemos a aplicarlos a la controversia de autos.

Como vimos, en el caso de epígrafe el Gobierno de Puerto Rico presentó ante el Tribunal de Apelaciones un recurso de *certiorari* acompañado de una Moción en Auxilio de Jurisdicción. En esta, peticionó que se dejara sin efecto el *injunction* emitido por el Tribunal de Primera Instancia, Sala Superior de Caguas. El foro apelativo intermedio emitió una Resolución en la cual le concedió siete (7) días a la parte recurrida de epígrafe para que se expresara en cuanto al recurso y la Moción en Auxilio de Jurisdicción.

El Tribunal de Apelaciones erró con tal proceder. Como hemos discutido, una moción en auxilio de jurisdicción correctamente utilizada, coloca ante la consideración del foro apelativo una situación de gran importancia en la cual puede quedar adversamente afectada su jurisdicción o causarse daños serios a una parte. En casos de alto interés público como el de autos, la urgencia de la situación es aún mayor. **El Tribunal de Apelaciones debe actuar con toda la celeridad debida para evitar que: 1) se afecte negativamente el interés público y 2) se fomente un panorama de incertidumbre jurídica.**

Es por ello que en casos de alto interés público, como por ejemplo aquellos que versen sobre temas de separación de poderes, violaciones a derechos constitucionales, casos de menores o en los cuales se afecte la libertad de un ciudadano, el foro apelativo intermedio no puede conceder términos para que otras partes en el pleito se expresen en cuanto a un remedio solicitado en auxilio de su jurisdicción, sin antes evaluar si la solicitud merece un remedio inmediato o si, por el contrario, carece de mérito. Al así proceder, el Tribunal de Apelaciones estaría obviando la urgencia de ese recurso extraordinario. Aun cuando la concesión de ese remedio está sujeta a su sana discreción, ello no significa que tal discreción opera en un vacío, y el tribunal debe ponderar el interés de todas las partes involucradas en el pleito, sin que ello conlleve el conceder términos a estas para expresarse en cuanto a este. **Por ende, establecemos que en casos en los cuales se presenten situaciones como las antes descritas, el Tribunal de Apelaciones no puede conceder términos a las partes para que se expresen en cuanto a una moción en auxilio de jurisdicción, sin antes evaluar si la solicitud es meritoria de su faz.**

Lo anterior no significa que el Tribunal de Apelaciones deba conceder inmediatamente, cuan objeto autómata, cualquier remedio solicitado mediante moción en auxilio de jurisdicción. *A contrario sensu*, el foro

apelativo intermedio debe utilizar su discreción responsablemente para analizar si el remedio procede en derecho. Como todo acto discrecional, el Tribunal de Apelaciones puede ponderar la situación ya que pueden existir diferentes grados de urgencia. Incluso, si el tribunal entiende que es meritorio o conveniente escuchar a la otra parte antes de adjudicar la moción, puede conceder un término corto —lo más limitado posible- antes de resolver. Inclusive puede emitir un remedio provisional en auxilio de su jurisdicción, sujeto a la disposición definitiva de la Moción una vez la otra parte comparezca. Pero lo que no puede hacer es conceder términos a las partes para que se expresen en cuanto al remedio solicitado en auxilio de jurisdicción si con ello se fomenta un impermisible panorama de incertidumbre o se incurre en el riesgo de tornar académico el pleito. Tampoco pueden concederse términos sin evaluar antes los méritos de la moción en auxilio de jurisdicción a tenor con la jurisprudencia aplicable, ya que ello le resta importancia a la situación presentada y tiene el efecto práctico de denegar *sub silentio* una moción en la cual se solicita la intervención urgente del Tribunal.

La disidencia sostiene que esta norma crea una injustificada distinción en el manejo de mociones en auxilio de jurisdicción entre el Tribunal de Apelaciones y este Foro, pues "el Tribunal Supremo de Puerto Rico

incurre cotidianamente en la misma práctica por la que hoy reprende al foro intermedio". Op. Disidente pág. 9. Ello es incorrecto.

Primero, en las ocasiones en que proveemos términos a las partes para que se expresen en cuanto a mociones en auxilio de jurisdicción lo hacemos **luego** de ponderar los factores enumerados en *Peña v. Federación de Esgrima de P.R.*, supra y la Regla 28 del Reglamento de este Tribunal. Segundo, la disidencia parece no reconocer que la norma anunciada en esta Opinión aplica solo a casos en donde la concesión de un término a una parte fomenta un impermisible panorama de incertidumbre jurídica, y no a "cualquier moción en auxilio de jurisdicción" presentada. Ante ello, no cabe hablar de distinciones injustificadas ya que este Tribunal solo concede términos en casos donde no se cree un panorama de incertidumbre ni exista un riesgo de convertir el pleito en académico.

B.

A tenor con lo anterior, pasemos a aplicar los factores enumerados en *Peña v. Federación de Esgrima de P.R.*, supra, y *Pantoja Oquendo v. Mun. de San Juan*, supra, para determinar si la Moción en Auxilio de Jurisdicción presentada por el Estado en el caso de autos era meritoria de su faz y si la concesión de término provista por el Tribunal de Apelaciones fomentó un impermisible panorama de incertidumbre.

En el caso de autos, se solicitó una Orden de Paralización de un *injunction* emitido por el Tribunal de Primera Instancia. Mediante este último, se le prohibió al Secretario de Educación continuar con el procedimiento de cierre de la Escuela Superior Luis Muñoz Iglesias. De un análisis de los autos podemos colegir que la parte peticionaria cumplió con todos los requisitos necesarios para la expedición de una Orden de Paralización de los efectos del *injunction*.

De entrada, mediante la Moción en Auxilio de Jurisdicción presentada ante el Tribunal de Apelaciones, el Departamento de Educación expresó claramente el alto interés público que involucra el caso de autos. Se trata de controversias de separación de poderes, y de la utilización por parte del Poder Ejecutivo de sus facultades para administrar el erario. Debemos recordar que, en cuanto al derecho a la educación se refiere, la Constitución de Puerto Rico en su Artículo II, Sección 5 establece la enseñanza en escuelas públicas será gratuita y "**hasta donde las facilidades del Estado lo permitan**, se hará obligatoria para la escuela primaria". Art. II, Sec. 5, Const. E.L.A., L.P.R.A., Tomo 1, pág. 292. Por ende, este caso involucra directamente una de las responsabilidades constitucionales ineludibles del Poder Ejecutivo: la obligación de delinear las alternativas más

razonables para el mejor y más eficiente uso de los fondos públicos, los cuales no son ilimitados.

Por otro lado, el Gobierno de Puerto Rico demostró que sufriría un daño serio si no se concedía el remedio de paralización que solicitó en auxilio de la jurisdicción del foro apelativo intermedio. La consolidación de la Escuela Superior Luis Muñoz Iglesias formaba parte de un plan integrado del Departamento de Educación. Al momento de presentar su Moción en Auxilio de Jurisdicción, el semestre escolar de agosto 2011 estaba a aproximadamente dos (2) semanas de comenzar, por lo cual si no se paralizaba el *injunction* emitido por el Tribunal de Primera Instancia, el Estado sufriría un palpable daño. Ello es así ya que quedaría trastocado su plan para maximizar el uso de planteles escolares con el fin de lograr una planificación coherente del sistema de instrucción pública. A su vez, de no paralizarse los efectos del *injunction* se fomentaría un panorama de incertidumbre en el cual el estado no podría cumplir con sus planes de consolidación de escuelas para el manejo de fondos públicos.

Por otra parte, no existía riesgo de que la paralización del *injunction* en el caso de autos causaría un daño sustancial a la parte recurrida de epígrafe. Los estudiantes de la Escuela Superior Luis Muñoz Iglesias no verían su derecho a la educación afectado ya que todas las

operaciones de su plantel escolar serían consolidadas con las de otra escuela. La posible molestia que podría causarle a los recurridos el tener que viajar a otra escuela no es un daño grave. Ergo, la paralización del *injunction* en el caso de autos no ocasionaría daño sustancial a los estudiantes.

Finalmente, el Gobierno de Puerto Rico presentó un caso fuerte con altas probabilidades de prevalecer en los méritos. Los recurridos argumentan que el Departamento de Educación los privó de su derecho constitucional a un debido proceso de ley ya que no siguió los procedimientos para el cierre de escuelas establecidos en la Carta Circular Núm. 4-2009-2010, los cuales incluían notificación a los consejos escolares para que estos emitieran comentarios y recomendaciones al Secretario de Educación. No obstante, en ese documento se establecen unas directrices generales, y se deja claro que estas **"no limitan la autoridad del Secretario de Educación para aceptar o no, las recomendaciones del Comité [para el Cierre], ni su autoridad para tomar acción, aunque no haya recibido recomendación"**. Véase Apéndice Petición de *Certiorari*, pág. 49.[5]

---

[5] Por otro lado, el Art. 678 del Código de Enjuiciamiento Civil establece, en lo pertinente, que no se podrá emitir un *injunction* o una orden de entredicho en la siguiente circunstancia:

    (3) Para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, o el cumplimiento de cualquier actuación autorizada por ley de la Asamblea Legislativa de Puerto Rico, de un funcionario

Todos estos factores demuestran que el Gobierno de Puerto Rico cumplió con los requisitos esbozados en nuestra jurisprudencia para que se ordenara la paralización del *injunction* provisional emitido por el Tribunal de Primera Instancia. Pero de mayor importancia es que el Gobierno de Puerto Rico argumentó correctamente el alto interés público presentado en el caso y el panorama de incertidumbre que se fomentaría si no se paralizaban los efectos de la sentencia del foro de instancia. Ante esas circunstancias, la Moción en Auxilio de Jurisdicción presentada por el Gobierno de Puerto Rico era meritoria de su faz, por lo cual erró el Tribunal de Apelaciones al no conceder el remedio de paralización solicitado mediante esta. La concesión de un término de siete (7) días a la parte recurrida de epígrafe para que se expresara en cuanto a la moción aludida tuvo el efecto de fomentar un impermisible panorama de incertidumbre. Ante tal cuadro fáctico, se debieron paralizar los efectos del dictamen del Tribunal de Primera Instancia sin conceder el término aludido.

---

público, de una corporación pública, o de una agencia pública, o de cualquier empleado o funcionario de dicha corporación o agencia, **a menos que se hubiera determinado por sentencia final, firme, inapelable e irreversible que dicha ley o actuación autorizada por ley es inconstitucional o inválida.** 32 L.P.R.A. sec. 3524(3) (Énfasis suplido).

Ante este mandato estatutario, el Gobierno solidificó su caso con altas probabilidades de prevalecer, ya que no surge de los autos que el Tribunal de Primera Instancia haya declarado inconstitucional la Carta Circular Núm. 4-2009-2010 o la Ley Orgánica del Departamento de Educación, Ley 149-1999 (3 L.P.R.A. sec. 143a *et seq.*) previo a la emisión del *injunction*.

V

Por los fundamentos antes expuestos, se expide el auto de *certiorari* y se declara este Ha Lugar. Por ende, se mantienen paralizados los efectos del interdicto preliminar que fue emitido por el Tribunal de Primera Instancia, Sala Superior de Caguas. A tales efectos, se devuelve el caso al Tribunal de Apelaciones para que atienda con la celeridad debida los méritos del recurso de *certiorari* presentado ante ese foro.

Se dictará sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mirta García López y Otros

    Recurrida

       v.

Estado Libre Asociado de Puerto Rico y otros

    Peticionarios

*Certiorari*

CC-2011-610

SENTENCIA

En San Juan, Puerto Rico, a 10 de abril de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se expide el auto de *certiorari* y se declara este Ha Lugar. Por ende, se mantienen paralizados los efectos del interdicto preliminar que fue emitido por el Tribunal de Primera Instancia, Sala Superior de Caguas. A tales efectos, se devuelve el caso al Tribunal de Apelaciones para que atienda con la celeridad debida los méritos del recurso de *certiorari* presentado ante ese foro.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad. La Jueza Asociada señora Fiol Matta concurre con el resultado y hace constar la siguiente expresión:

La Jueza Asociada señora Fiol Matta concurre con el resultado por entender que el Tribunal de Apelaciones se excedió en el ejercicio de su discreción al otorgar un plazo de siete (7) días para que la parte recurrida se expresara en cuanto a la solicitud de auxilio de

jurisdicción presentada por el Estado. Dado los hechos particulares de este caso, el foro apelativo debió atender la petición de auxilio de jurisdicción con mayor premura. Sin embargo no por ello podemos concluir que el foro apelativo no dio consideración oportuna a la moción de su faz, según indica la Opinión mayoritaria. Además, el que el Tribunal de Apelaciones ejerciera su discreción de forma irrazonable en este caso no equivale, contrario a lo que aparenta concluir la Opinión mayoritaria, a que dicho tribunal carezca de discreción para otorgar plazos razonables para que las partes se expresen cuando se le presenten solicitudes en auxilio de jurisdicción. Al igual que en el caso de autos, el estándar aplicable debe ser el de abuso de discreción según los hechos particulares de cada caso. En ese sentido, no puedo estar conforme con el análisis realizado por la Opinión mayoritaria que limita innecesariamente la discreción judicial.

La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión Disidente a la cual se unió el Juez Presidente señor Hernández Denton. El Juez Asociado señor Feliberti Cintrón no interviene.


                              Larissa Ortiz Modestti
                    Secretaria del Tribunal Supremo, Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mirta García López y otros

    Recurridos

       v.

                    CC-2011-610         Certiorari

Estado Libre Asociado de
Puerto Rico y otros

    Peticionarios

Opinión de conformidad emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 10 de abril de 2012.

La naturaleza de las mociones en auxilio de jurisdicción han requerido que este Tribunal delimite y aclare lo que constituye un abuso de discreción en el trámite de éstas ante el Tribunal de Apelaciones bajo distintas circunstancias. Nos toca hoy nuevamente emitir juicio sobre ello.

I

La Opinión emitida en el caso de epígrafe responde a la necesidad de establecer unos parámetros a la discreción del Tribunal de Apelaciones al tramitar las mociones en auxilio de jurisdicción ante su consideración en casos de alto interés público. Especialmente, aquellos

que requieren y merecen que el foro intermedio evalúe si la solicitud es meritoria para actuar con premura en la concesión de remedios antes de conferir términos a las partes para que se expresen y cuyo efecto conlleve resultados irreparables para éstas.

Antes de la decisión hoy alcanzada, este Tribunal atendió recientemente el caso de Pantoja Oquendo v. Mun. de San Juan, res. 9 de junio de 2011, 2011 T.S.P.R. 82, 182 D.P.R.___(2011). En éste nos encontrábamos ante una solicitud de auxilio de jurisdicción debido a un interdicto preliminar emitido por el Tribunal de Primera Instancia para que el Municipio de San Juan desistiera de impedir a un grupo de féminas del Movimiento Amplio de Mujeres de Puerto Rico pintar un mural que leía: "Tod@s contra la Violencia Machista". Como parte de los sucesos acaecidos, el Municipio de San Juan acudió ante el Tribunal de Apelaciones mediante un recurso de apelación que se acompañó con una moción en auxilio de jurisdicción en la cual solicitó que se dejara sin efecto el interdicto preliminar expedido. El mismo día, el foro intermedio emitió una resolución en la que concedió un término de diez días a las partes para que se expresaran sobre el recurso y sobre la moción de auxilio de jurisdicción presentada por el Municipio de San Juan.

Ante dichas circunstancias, en el caso de Pantoja Oquendo v. Mun. de San Juan, supra, la mayoría de este

Tribunal concluyó que el Tribunal de Apelaciones no atendió con celeridad la moción en auxilio de jurisdicción presentada por el Municipio de San Juan. Para ello, auscultó los méritos del interdicto preliminar emitido por el Tribunal de Primera Instancia y, a su vez, adjudicó la totalidad de la controversia. Al así hacerlo, la mayoría entendió que era necesario acreditar la naturaleza y titularidad de la propiedad en donde se pretendía ejercer el derecho de libertad de expresión. Asimismo, apuntó que no se podía permitir dejar al Municipio de San Juan en una especie de "vacío jurídico" mediante el cual el ejercicio de un derecho fundamental implica la posibilidad de incurrir en conducta delictiva. Íd., pág. 14. Por estas razones, la mayoría de este Tribunal dilucidó que el foro intermedio debió paralizar inmediatamente los efectos del interdicto concedido.

En aquella ocasión disentí del curso decisorio optado por la mayoría de este Tribunal. Mi criterio respondió a que en la etapa procesal en la que se encontraba el caso era innecesario acreditar la naturaleza pública o privada del lugar donde se pretendía ejercer el derecho a la libertad de expresión, como paso previo a la concesión de un interdicto preliminar. Además, resultaba insuficiente el reclamo del Municipio de San Juan de mantener la estética y ornato como fundamento para dejar sin efecto el interdicto emitido por el foro primario. Juzgué que —a base de los

hechos particulares del caso- el Tribunal de Apelaciones actuó razonablemente y ejerció adecuada discreción al acortar los términos a diez días para escuchar a las partes.

De acuerdo a ello suscribí la Opinión disidente emitida en Pantoja Oquendo v. Mun. de San Juan, *supra*. En ésta se precisó que el interdicto preliminar se emitió como medida cautelar para proteger el reclamo de libertad de expresión. Por tanto, avalé que el foro intermedio permitiera al grupo protegido expresarse sobre su reclamo. Esa actuación fue a todas luces diligente.

Hoy nos encontramos ante una controversia distinguible a la que nos enfrentamos en Pantoja Oquendo v. Mun. de San Juan, *supra.* Los hechos particulares de la causa ante este Tribunal así lo demuestran.

El presente caso, consiste de la determinación del Departamento de Educación -a pocos meses de comenzar el año escolar- de cerrar la Escuela Superior Luis Muñoz Iglesias del Municipio de Cidra y consolidar las operaciones del plantel escolar con la Escuela Superior Ana J. Candelas de ese municipio. Ello dio lugar a la solicitud inmediata de un interdicto preliminar ante el Tribunal de Primera Instancia. Durante ese proceso, el Gobierno de Puerto Rico arguyó que la solicitud violaba la separación de poderes, resultaba en una intromisión indebida de sus prerrogativas y que los recurridos no sufrirían un daño ya que los

estudiantes y maestros serían reubicados dentro del mismo municipio. El foro primario expidió un *injunction* provisional y ordenó al Departamento de Educación dejar sin efecto el cierre de la escuela. Como consecuencia, el Gobierno de Puerto Rico acudió ante el Tribunal de Apelaciones mediante recurso de *certiorari* y solicitó el auxilio de jurisdicción dado el alto interés público **y el hecho que el nuevo semestre escolar estaba a solo días de comenzar.** A pesar de la inminencia de la necesidad de tomar una decisión, el foro intermedio concedió siete días a la parte recurrida para que se expresara sobre el auxilio de jurisdicción y la petición de *certiorari* ante la consideración de ese foro. Ante tales circunstancias, el Gobierno de Puerto Rico acudió a esta Curia bajo el fundamento de que erró el Tribunal de Apelaciones al no paralizar la efectividad del *injunction* emitido por el Tribunal de Primera Instancia. Al día siguiente, procedimos a paralizar los efectos del *injunction* pronunciado por el Tribunal de Primera Instancia y ordenamos mostrar causa por la cual no debíamos revocar la resolución emitida por el foro intermedio.

En cuanto al trámite conducido por el Tribunal de Apelaciones al atender una moción en auxilio de jurisdicción no debe haber discrepancia en que éstas deben ser atendidas con celeridad. Las expresiones recogidas por la mayoría de este Tribunal simplemente dirigen al Tribunal

de Apelaciones a prestar atención a los casos de alto interés público y evitar un panorama de incertidumbre jurídica.

A estos efectos, le recordamos al foro apelativo intermedio que su discreción no puede ejercerse en el vacío. Advertimos que al atender una solicitud de auxilio de jurisdicción en estos casos y antes de conceder un término para que otras partes se expresen debe evaluar si la solicitud es meritoria de su faz. Ello no debe entenderse ni conlleva una restricción a las funciones del foro intermedio. Por el contrario, simplemente anunciamos el deber del foro apelativo intermedio de atender las solicitudes en auxilio de jurisdicción y los parámetros que conllevan un abuso de discreción al tramitar los casos ante su consideración.

Al estudiar las circunstancias del presente caso consideramos que -contrario a lo ocurrido en Pantoja Oquendo v. Mun. de San Juan, *supra*- el asunto ante la consideración del Tribunal de Apelaciones ameritaba la pronta intervención de ese foro. En el caso ante nuestra consideración no podemos perder de perspectiva que estábamos a tan sólo unos pocos días para el inicio del año escolar. El Departamento de Educación indicó las razones para cerrar la Escuela Superior Luis Muñoz Iglesias y su plan de reubicar a los estudiantes y maestros de ésta para no afectar el derecho a la educación. La orden emitida por

el Tribunal de Primera Instancia imponía sobre el Gobierno de Puerto Rico una carga cuyo efecto podría trastocar el plan para maximizar el uso de planteles escolares y la planificación del sistema de instrucción pública. No atender los asuntos ante la consideración del foro apelativo intermedio redundaría claramente en una inseguridad que podría afectar los derechos de todas las partes causándole un daño inminente. Así, y bajo estas circunstancias, el trámite seguido por el Tribunal de Apelaciones al no adjudicar con prioridad la procedencia del auxilio de jurisdicción ante su consideración y conceder un término de siete días para que la otra parte se exprese conllevaría a todas luces un efecto nefasto en la concesión de un remedio.

Las particularidades del caso ante esta Curia demuestran que el Tribunal de Apelaciones abusó de su discreción al tramitar la controversia ante su consideración. A pocos días de comenzar el curso escolar conceder un término de siete días para escuchar a las otras partes sin atender con mayor prontitud la controversia ante ese foro conllevaría un disloque operacional para el año escolar. Todo ello, distinto a la situación a la que nos enfrentamos en <u>Pantoja Oquendo v. Mun. de San Juan</u>, *supra.* Recordamos que la discreción es una facultad del poder decisorio de los tribunales para decidir en una u otra forma, es decir, para escoger entre uno o varios cursos de

acción. Esa potestad debe ejercerse de forma razonable para alcanzar una conclusión justiciera que responda y produzca un remedio compatible con los intereses públicos envueltos. HIETEL v. PRTC, res. 30 de junio de 2011, 2011 T.S.P.R. 100, 182 D.P.R.___; Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 657-658 (1997) (Citas omitidas).

El Tribunal de Apelaciones al escoger su curso de acción no lo hizo razonablemente. El foro apelativo intermedio debió atender con mayor premura la situación de autos. Como consecuencia de ello, avalo la postura de la mayoría de este Tribunal.


                                LUIS F. ESTRELLA MARTÍNEZ
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Mirta García López y otros<br><br>Recurridos<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico y otros<br><br>Peticionarios | | CC-2011-610 |

Opinión Disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une el Juez Presidente señor Hernández Denton

San Juan, Puerto Rico, a 10 de abril de 2012

En el día hoy, una mayoría de este Tribunal reafirma las expresiones que vertiera en *Pantoja Oquendo v. Mun. de San* Juan, 2011 T.S.P.R. 82, 182 D.P.R. ___, y resuelve que, en casos de alto interés público, el Tribunal de Apelaciones carece de discreción para otorgar un término a la parte recurrida para que se exprese en torno a una moción en auxilio de jurisdicción presentada en su contra, sin antes evaluar si tal solicitud merece un remedio inmediato o si carece de méritos. Por entender que nada en nuestro ordenamiento procesal prohíbe el proceder del foro apelativo intermedio y que la opinión mayoritaria se basa en la premisa errónea de que el Tribunal de Apelaciones actuó sin evaluar los méritos de la controversia ante sí, disiento.

I

El 17 de mayo de 2011, un grupo de padres y maestros de estudiantes de la Escuela Superior Luis Muñoz Iglesias (en adelante los recurridos), del municipio de Cidra, recibieron una comunicación del entonces Secretario de Educación, Jesús Rivera Sánchez, mediante la cual se les informó que, conforme al procedimiento establecido en la Carta Circular Número 4-2009-2010, su escuela sería cerrada desde el 31 de mayo de 2011 en adelante y que las operaciones de dicho plantel escolar serían consolidadas con las de la Escuela Superior Ana J. Candelas, de mismo municipio.

En desacuerdo con esta acción administrativa, el 1 de junio de 2011, los recurridos instaron un pleito de interdicto preliminar ante el Tribunal de Primera Instancia. Solicitaron que se paralizara la orden de cierre y posterior consolidación de su plantel escolar y alegaron que el Secretario de Educación violó sus derechos constitucionales a un debido proceso de ley y a la igual protección de las leyes al ordenar el cierre de la escuela Muñoz Iglesias sin cumplir con el procedimiento establecido en la Carta Circular Número 4-2009-2010, particularmente con su exigencia de notificar al Consejo Escolar la evaluación que se realice de la escuela previo a ordenarse el cierre de la misma, para que este organismo pueda expresarse en torno a la recomendación de cierre y pueda remitir sus comentarios

al Secretario de Educación. Por su parte, el Gobierno respondió que el mencionado requisito era una mera directriz general y que la propia Carta Circular establecía que en nada se alteraba la facultad del Secretario de Educación para cerrar escuelas aunque no hubiese recibido recomendaciones al respecto.

Tras varios trámites procesales, los cuales incluyeron una vista de *injunction* preliminar, el Tribunal de Primera Instancia dio la razón a los recurridos, por lo cual expidió un *injunction* provisional y ordenó al Departamento de Educación a dejar sin efecto el cierre de la Escuela Superior Muñoz Iglesias. El foro primario concluyó que el Estado no cumplió con el proceso establecido en la Carta Circular, por lo que violó el debido proceso de ley de los recurridos. Además, concluyó que el cierre ilegal de su escuela representaría un daño irreparable.

Inconforme, el 15 de julio de 2011, el Gobierno de Puerto Rico acudió oportunamente al Tribunal de Apelaciones mediante recurso de *certiorari*, el cual acompañó con una moción de en auxilio de jurisdicción en la que solicitó que se dejara sin efecto el *injunction* provisional otorgado por el Tribunal de Primera Instancia mientras se dilucidaba el recurso de *certiorari*. El mismo día, el tribunal intermedio otorgó un término de siete (7) días a la parte recurrida para que expresara su

posición en torno a la moción en auxilio de jurisdicción, así como respecto al *certiorari*.

Aún inconforme, el 21 de julio de 2011, el Estado presentó ante nuestra consideración una petición de *certiorari*, junto con una moción en auxilio de jurisdicción, en la cual solicitó que dejáramos sin efecto inmediatamente el *injunction* emitido. Alegó que, según establecido en *Pantoja Oquendo v. Mun. de San Juan*, 2011 T.S.P.R. 82, el Tribunal de Apelaciones erró al otorgar un término de siete (7) días a la parte recurrida para que ésta se expresara, en lugar de resolver inmediatamente la moción en auxilio de jurisdicción.

El 22 de julio de 2011, este Tribunal declaró *ha lugar* la moción en auxilio de jurisdicción, paralizando de esta forma los efectos del *injunction*, y ordenó a la parte recurrida mostrar causa por la cual no debía revocarse la Resolución del Tribunal de Apelaciones. Ya desde entonces mostré mi insatisfacción con el proceder de esta Curia, por lo que hice constar en la Resolución emitida por este Tribunal que, por razones similares a las expresadas en mi opinión disidente en *Pantoja Oquendo v. Mun. de San Juan*, 2011 T.S.P.R. 82, consideraba inapropiada nuestra intervención en esta etapa de los procedimientos. Mi postura no ha cambiado.

**II**

Como bien señala la mayoría en su exposición sobre la naturaleza de la moción en auxilio de jurisdicción, este recurso es, en esencia, un llamado a la utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia. *Pantoja*, 2011 T.S.P.R. 82; *San Gerónimo Caribe Project v. A.R.Pe.*, 174 D.P.R. 640, 654 (2008); *Misión Ind. P.R. v. J.P.*, 142 D.P.R. 656, 678 (1997). Se trata, pues, de un remedio cuya concesión recae en la sana discreción de los tribunales y que sólo está disponible excepcionalmente y para casos en los que existan situaciones de verdadera emergencia. *Marrero Rivera v. Dolz*, 142 D.P.R. 72, 73 (1996).

Sobre la concesión de órdenes en auxilio de jurisdicción por parte de los tribunales apelativos, la Regla 79 del Reglamento del Tribunal de Apelaciones dispone que:

> (A) Para hacer efectiva su jurisdicción en cualquier asunto pendiente ante sí, el Tribunal de Apelaciones podrá expedir cualquier orden provisional, la cual será obligatoria para las partes en la acción, sus oficiales, sus agentes, empleados(as) y abogados(as), y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. Dichas órdenes se regirán por las disposiciones pertinentes del Código de Enjuiciamiento Civil, las Reglas de Procedimiento Civil, Las Reglas de Procedimiento Criminal y, en

lo que no fuere incompatible con aquélla, se regirán también por estas reglas.
4 L.P.R.A. Ap. XXII-B R. 79.

Asimismo, la Regla 28 del Reglamento del Tribunal Supremo de Puerto Rico recoge la facultad de este Foro para emitir este tipo de órdenes:

> (a) El Tribunal [Supremo] podrá expedir una orden provisional en auxilio de jurisdicción cuando fuere necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración.
> A los fines de esta Regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente, con el propósito de evitar alguna consecuencia adversa que afecte su jurisdicción o que pueda causar daño sustancial a una parte mientras resuelve el recurso.

*In re: Reglamento del Tribunal Supremo*, 2011 T.S.P.R. 174.

Como puede apreciarse de la exposición de los hechos de este caso, así como del derecho aplicable a la controversia que plantea, nada en nuestro ordenamiento jurídico conduce al resultado al que llega hoy una mayoría de esta Curia. Veamos.

### III

Al igual que en *Pantoja Oquendo v. Mun. de San Juan*, 2011 T.S.P.R. 82, la única controversia que pende ante nuestra consideración es si constituyó un abuso de discreción del Tribunal de Apelaciones conceder un término breve a los recurridos para que se expresaran en torno a la moción en auxilio de jurisdicción y el recurso de *certiorari* presentados en su contra. Sólo de eso trata

este caso; de nada más. Al resolver erróneamente que sí abusó de su discreción, este Tribunal opta una vez más por sustituir su criterio por el del tribunal que evaluó la prueba presentada en corte, sin permitir siquiera que el Tribunal de Apelaciones emitiera una adjudicación en los méritos.

En *Pantoja*, una mayoría de este Tribunal dejó sin efecto un interdicto preliminar expedido por el Tribunal de Primera Instancia para que el Municipio de San Juan desistiera de impedirles a las allí recurridas, partidarias del Movimiento Amplio de Mujeres de Puerto Rico, pintar un mural como manifestación en contra la violencia machista en lo que entendió era un foro público tradicional o por designación, tras concluir que el Tribunal de Apelaciones había abusado de su discreción al otorgar, **el mismo día en que se presentaron los recursos**, un término de diez (10) días a la parte recurrida para que se expresara en torno a las mociones presentadas en su contra. Según este Tribunal, el foro intermedio erró en aquella ocasión "al no atender con premura y celeridad la moción en auxilio de jurisdicción que se le presentara", *id.* en la pág. 10, por lo su acción creó una especie de "vacío jurídico" y un "panorama de incertidumbre" que perjudicó, irónicamente, al Movimiento Amplio de Mujeres, la propia parte a cuyo favor se había expedido el interdicto preliminar. *Id.* en las págs. 10-

11. En otras palabras, para impedir la supuesta incertidumbre en torno al ejercicio de un derecho constitucional **que acababa de ser validado por el Tribunal de Primera Instancia mediante la concesión del interdicto**, esta Curia decidió terminar esa "incertidumbre" mediante la revocación del dictamen que validaba dicho ejercicio y adjudicando en contra de la parte alegadamente perjudicada por la misma, sin siquiera dejarle expresarse.

Dado el hecho de que la controversia procesal que nos ocupó en aquel caso era prácticamente idéntica a la del caso de *autos*, merece la pena repetir las expresiones que al respecto emitiéramos en nuestra opinión disidente:

> Considero innecesaria la intervención nuestra en esta etapa de los procedimientos. Adviértase que el interdicto preliminar se expidió por el foro de instancia como medida cautelar para proteger un reclamo de libertad de expresión. Lo razonable en estos casos, donde se solicita que en auxilio de jurisdicción se deje sin efecto una orden de interdicto, es actuar precisamente como actuó el foro apelativo intermedio; brindándole una oportunidad a la parte que reclama que se le ha conculcado su derecho a la libertad de expresión y que ha recibido protección de parte del foro de instancia para expresarse en torno al reclamo de la otra parte. El foro apelativo fue en extremo diligente en este caso. El mismo día en que se presentó la moción en auxilio de jurisdicción y el escrito de apelación, acortó los términos y concedió 10 días a las demandantes para que se expresaran. **Concluir, como hace el Tribunal, que el Tribunal de Apelaciones abusó de su discreción "al no atender con celeridad la moción en auxilio de jurisdicción presentada", sorprende y consterna pues no refleja la realidad. Por otro lado, debemos preguntarnos: ¿En qué reside el abuso**

> **de discreción si la moción se atendió el mismo día que se presentó y se acortaron los términos? ¿En qué consiste el grave daño sufrido por los demandados que exigiría paralizar los efectos del interdicto preliminar expedido sin escuchar a la parte beneficiada por éste? ¿Qué peligra? El Tribunal, a mi juicio, no ofrece una respuesta satisfactoria.**

*Id.* en la pág. 19 (énfasis omitido y énfasis suplido).

En el caso ante nuestra consideración actualmente, la concesión del *injunction* expedido estuvo predicada en la violación de otro derecho constitucional: el derecho a un debido proceso de ley; por tanto, las precitadas expresiones son igualmente aplicables. Más impactante aún resulta que el término otorgado a la parte recurrida en este caso es incluso más corto que el ofrecido en *Pantoja*. Mientras que el tribunal apelativo en *Pantoja* concedió diez (10) días a la parte recurrida, en este caso lo limitó a siete (7). Aun así, este Tribunal resuelve que dicho tribunal abusó de su discreción. Difiero del criterio mayoritario.

"¿No sería mejor escuchar a ambas partes? ¿No está este Tribunal interviniendo con las determinaciones discrecionales del foro de apelación sobre cómo manejar los asuntos relacionados a la tramitación de los casos ante su consideración? No podemos reclamar deferencia para con las decisiones del Tribunal de Apelaciones en unos casos y en otros no". *Id.* en la pág. 20.

Este Tribunal establece expresamente el día de hoy que, en casos de alto interés público, el Tribunal de

Apelaciones no puede conceder términos a las partes para que se expresen en cuanto a una moción en auxilio de jurisdicción, sin antes evaluar si la solicitud es meritoria de su faz. Esta norma es problemática por diversas razones.

En primer lugar, como ya discutimos, no existe fundamento jurídico alguno en nuestro ordenamiento procesal que prohíba tal conducta por parte del Tribunal de Apelaciones. Imponer esta restricción implica lacerar la sana discreción que ostentan los foros apelativos para tramitar los casos ante su consideración.

En segundo lugar, parece crear una distinción injustificada entre el Tribunal de Apelaciones y este Foro, pues el Tribunal Supremo de Puerto Rico incurre cotidianamente en la misma práctica por la que hoy reprende al foro intermedio. Constantemente otorgamos términos a las partes recurridas para que se expresen en torno a las mociones de auxilio de jurisdicción presentadas en su contra previo a tomar una determinación al respecto. De hecho, en no pocas ocasiones, la comparecencia de la parte recurrida trae a colación defensas relevantes o planteamientos jurisdiccionales no esbozados por la peticionaria en su petición de auxilio, por lo que resultan de gran valor para la correcta adjudicación en los méritos tanto de la petición de auxilio como del recurso al que acompaña.

La norma que hoy adopta la mayoría podría resultar en que, ante cualquier moción en auxilio de jurisdicción bien redactada en la que se plantee la existencia de un alto interés público, incluso aunque se hayan omitido elementos importantes que inclinarían la decisión a favor de la parte ausente, el Tribunal de Apelaciones vendría obligado a declarar *ha lugar* inmediatamente la misma, pues ya le consta que al otorgar un término de apenas siete (7) días a la parte recurrida, **el mismo día en que se presentó la moción en auxilio de jurisdicción en su contra**, constituiría un abuso de discreción de su parte. El otro resultado posible sería que el foro apelativo optase por denegar de plano lo que parecería una moción en auxilio de jurisdicción meritoria debido a que, ante la imposibilidad de otorgar un término razonable a la parte recurrida para que se exprese sus argumentos, prefiera mantener el *statu quo* que adjudicar en los méritos una moción sin el beneficio de la comparecencia de la parte que se vería perjudicada por su decisión. De cualquier forma, la norma pautada fomenta precisamente aquello que intenta evitar: que el juzgador apelativo se torne en un objeto autómata.

En tercer lugar, quizá el problema mayor que subyace la nueva norma, y que sin duda alguna sucedió en esta ocasión, es que se parte de la premisa equivocada de que el Tribunal de Apelaciones otorga términos a las

partes sin evaluar primero las mociones presentadas ante sí; en palabras de este Tribunal, "sin antes evaluar si la solicitud es meritoria de su faz". *Id*. en la pág. 15.

En este caso, no hay fundamento alguno para llegar a esta determinación ni para concluir que el Tribunal de Apelaciones "fomentó un panorama de incertidumbre jurídica" con su proceder. ¿Qué incertidumbre se crea con dejar expresarse a una otra parte sobre una moción presentada en su contra antes de tomar una determinación judicial que podría perjudicarle? Mientras exista un dictamen del Tribunal de Primera Instancia que no haya sido revertido por un foro apelativo, las partes deberán regirse por él y no tiene sentido que se catalogue como "panorama de incertidumbre" cualquier tiempo que transcurra entre la determinación que le afectó y la respuesta de un tribunal a una moción presentada para que dicho dictamen se revierta, siempre que el foro apelativo no haya actuado de manera arbitraria o claramente abusiva. Independientemente de cuán largo deba ser ese término para tornarse arbitrario o claramente abusivo, ciertamente el término de siete (7) días otorgado a los recurridos en este caso, **el mismo día en que se presentó la moción de auxilio de jurisdicción**, no satisface ese criterio.

La mayoría niega que su determinación implique que el Tribunal de Apelaciones deba "conceder inmediatamente,

cuan objeto autómata, cualquier remedio solicitado mediante moción en auxilio de jurisdicción" y sostiene que éste debe "utilizar su discreción responsablemente para analizar si el remedio solicitado procede en derecho". *Id.* en las págs. 15-16. Reconoce, incluso, que "si el tribunal entiende que es meritorio o conveniente escuchar a la otra parte antes e adjudicar la moción, puede conceder un término corto -lo más corto posible- antes de resolver". *Id.* en la pág. 16. Eso fue precisamente lo que sucedió en este caso. El Tribunal de Apelaciones utilizó responsablemente su criterio y, amparándose en la sana discreción que posee para tramitar los casos ante su consideración, optó por otorgar rápidamente un término corto a la parte recurrida para que le pusiera en mejor posición para evaluar las peticiones. Difícilmente podremos encontrar mejor ejemplo de diligencia y uso adecuado de la discreción judicial.

De ahora en adelante, parece ser que el foro apelativo vendrá obligado a justificar y detallar las razones por las cuales decide otorgar un término a las partes para expresar su sentir, pues cualquier silencio al respecto será interpretado por este Tribunal como una acto arbitrario que "le resta importancia a la situación presentada y [que] tiene el efecto práctico de denegar *sub silentio* una moción en la cual se solicita la intervención urgente del Tribunal". *Id.* en la pág. 16.

Por último, conforme a los planteamientos esbozados en esta opinión, no procede evaluar los méritos de los demás planteamientos esbozados por los peticionarios en su recurso de *certiorari*, en torno a que no procedía la concesión del *injunction* emitido en su contra, hasta tanto el Tribunal de Apelaciones haya tomado una decisión al respecto. Por tanto, nos abstenemos de pasar juicio sobre las determinaciones que sobre ello hiciera una mayoría de este Tribunal.

## IV

Por los fundamentos expuestos anteriormente, dejaría sin efecto la orden de paralización emitida por este Tribunal el 22 de julio de 2011, declararía *no ha lugar* el recurso de *certiorari* y devolvería el caso al Tribunal de Apelaciones para que evalúe en sus méritos si erró el Tribunal de Primera Instancia al conceder un *injunction* para impedir el cierre de la Escuela Superior Luis Muñoz Iglesias por violación al derecho constitucional de los recurridos a un debido proceso de ley.


                              Anabelle Rodríguez Rodríguez
                                    Juez Asociada