PUBLISHED

## *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **26th** *day of* **April, 2022**.

National Association for the Advancement of Colored People (Hanover County Chapter),
  Protect Hanover, Inc., Carolyn Charlene Blake,
  Michelle Lynn Braxton, Charles Alfred Morris,
  Betty Lozano, Larry Ellsworth Cotman,
  Bonnica Harris Cotman, McKinley Harris,
  Martha Anderson, Kenneth Leon Coleman,
  Mary Alda Wilson, Juanita Cash,
  Melinda Tyler Spurlock, Andrea M. Morgan,
  Roderick A. Morgan, Kathryn Woodcock,
  Timothy Miller and Robert C. French,                                    Petitioners,

v.                                              Record No. 0260-22-2
                                                Circuit Court No. CL-21-1776-6

Commonwealth of Virginia, e*x rel*.
  Virginia State Water Control Board,
  Virginia Department of Environmental Quality,
  Originally David K. Paylor now Michael Rolband in his Official Capacity as
  Director of the Virginia Department of Environmental Quality and Agency
  Secretary of the State Water Control Board and
  Wegmans Food Markets, Inc.,                                    Respondents.

Upon a Petition for Review Under Code § 8.01-626

Before Judges Russell, Raphael and Senior Judge Clements

Invoking this Court's jurisdiction under Code § 8.01-626, the National Association for

the Advancement of Colored People (Hanover County Chapter) and numerous other parties seek

review of an order of the Circuit Court of the City of Richmond denying a motion for

intermediate relief under Code § 2.2-4028. We directed the parties to file supplemental briefs

addressing whether Code § 8.01-626 confers subject-matter jurisdiction for this Court to consider

the denial of such intermediate relief.

Upon review of the petition, responses, the record, and the parties' supplemental briefs,

we conclude that we have subject-matter jurisdiction because petitioners are seeking review of

an order of a circuit court that "refuses an injunction." Code § 8.01-626. While the parties have disputed whether an injunction is an available remedy under Code § 2.2-4028, that question goes to the merits of the relief petitioners seek, not whether we have appellate jurisdiction to consider the question. Assuming without deciding that Code § 2.2-4028 permits the issuance of an interlocutory injunction, we conclude that petitioners are not entitled to such extraordinary relief because they have not shown that the usual relief under Code § 2.2-4028—a stay of the permit—would be inadequate.

## BACKGROUND

On March 1, 2021, the Virginia Department of Environmental Quality ("DEQ") issued a Virginia Water Protection (VWP) Permit to Wegmans Food Markets, Inc. to construct a distribution center in Hanover County. On April 23, 2021, petitioners filed a petition for appeal under Code §§ 2.2-4025 through -4030. On October 25, 2021, petitioners filed a motion for intermediate relief under Code § 2.2-4028. The motion sought "an [o]rder granting Petitioners 'Intermediate Relief' by ordering the suspension of all construction activities at the Wegmans site, except for any stabilization activities necessary . . . until such time as the Court may make a final decision on the merits."

On February 2, 2022, the circuit court denied the motion. In a sixteen-page letter opinion, the court implicitly assumed that an injunction was available under Code § 2.2-4028. The court concluded, however, that petitioners had "not shown (1) that there is an immediate, unavoidable, and irreparable injury or (2) that there is probable cause to anticipate a likelihood of reversible error."

Petitioners timely filed a petition for review, invoking this Court's jurisdiction under Code § 8.01-626. Petitioners ask this Court "to grant . . . intermediate injunctive relief until final review of the . . . Permit decision can be completed by the court below." "Alternatively,"

-2-

petitioners ask that, "if" work has already begun, "then Wegmans should be required to restore the damaged wetlands pending the outcome of litigation."

We directed the parties to file supplemental briefs addressing the distinction between a stay and an injunction, whether Code § 2.2-4028 permits injunctive relief, and whether we have subject-matter jurisdiction under Code § 8.01-626 to consider the petition for review.[1] The supplemental briefs have been filed and the question is ripe for adjudication.

ANALYSIS

Our disposition of this petition for review turns on the interpretation of two statutes: Code § 2.2-4028 and Code § 8.01-626. When a party seeks judicial review of an administrative-agency decision under the Administrative Process Act (APA), Code § 2.2-4028 permits the circuit court to grant certain "intermediate relief." The court is empowered to

> issue all necessary and appropriate process to postpone the effective dates or preserve existing status or rights pending conclusion of the review proceedings if the court finds the same to be required to prevent immediate, unavoidable, and irreparable injury and that the issues of law or fact presented are not only substantial but that there is probable cause for it to anticipate a likelihood of reversible error in accordance with § 2.2-4027. Actions by the court may include (i) the stay of operation of agency decisions of an injunctive nature or those requiring the payment of money or suspending or revoking a license or other benefit and (ii) continuation of previous licenses in effect until timely applications for renewal are duly determined by the agency.

---

[1] "[A] court always has jurisdiction to determine whether it has subject matter jurisdiction." *Parrish v. Fed. Nat'l Mortg. Ass'n*, 292 Va. 44, 52 (2016) (quoting *Morrison v. Bestler*, 239 Va. 166, 170 (1990)); *accord Barrett v. Minor*, 299 Va. 27, 28 (2020). "[T]he lack of subject matter jurisdiction can be raised at any time in the proceedings, even for the first time on appeal by the court *sua sponte*." *Porter v. Commonwealth*, 276 Va. 203, 228 (2008). When considering a question of subject-matter jurisdiction *sua sponte*, a court may direct the parties to file supplemental briefs addressing the question. *Id.* at 225.

Code § 2.2-4028. The parties agree that such "intermediate relief" may include an order staying the action of the administrative agency—in this case, a stay of the VWP permit. But they disagree about whether Code § 2.2-4028 empowers the circuit court to issue an injunction. Petitioners insist that an injunction is authorized. The Commonwealth and Wegmans argue that only a stay is permitted.

That disagreement forms the backdrop of the jurisdictional question presented here: if Code § 2.2-4028 permits only a stay, not an injunction, then do we have appellate jurisdiction over the petition for review under Code § 8.01-626? Code § 8.01-626 grants us appellate jurisdiction over a petition for review of an order adjudicating a request for injunctive relief; it does not reference jurisdiction over circuit-court stays of administrative-agency decisions. The Commonwealth and Wegmans say that we lack jurisdiction under Code § 8.01-626 because the circuit court's authority under § 2.2-4028 was limited to granting a stay, not an injunction, so its order cannot be appealed. Petitioners disagree.

We find that we have jurisdiction under Code § 8.01-626 because petitioners seek review of an order denying injunctive relief. On the merits, we assume without deciding that Code § 2.2-4028 authorizes injunctive relief in an extraordinary case when a stay of the agency action would be insufficient. But we find that petitioners have failed to make that showing here. We therefore affirm the circuit court's ruling "under the right-result-different-reason doctrine." *McClary v. Jenkins*, 299 Va. 216, 224 (2020); *Davis v. Commonwealth*, 73 Va. App. 500, 511 n.2 (2021).

I.      *This Court has appellate jurisdiction under Code § 8.01-626 because the petition seeks review of an order denying injunctive relief.*

In examining our appellate jurisdiction, we start from first principles. The Constitution of Virginia confines our "original and appellate jurisdiction" to what "the General Assembly

-4-

may from time to time establish." Va. Const. art. VI, § 1. In other words, our jurisdiction is "entirely prescribed by statute." *Canales v. Torres Orellana*, 67 Va. App. 759, 774 (2017) (en banc) (quoting *Kelley v. Stamos*, 285 Va. 68, 75 (2013)). Code § 17.1-405 sets forth the scope of our civil appellate jurisdiction. In most instances, that jurisdiction is limited to reviewing "final" decisions, judgments, and orders. Code § 17.1-405(1)-(3), (5). But subsection 4 of that statute confers appellate jurisdiction over certain "interlocutory" rulings, including a petition for review under Code § 8.01-626. Code § 17.1-405(4).

Code § 8.01-626, in turn, gives us jurisdiction to hear a petition for review when "a circuit court (i) grants an injunction or (ii) refuses an injunction or (iii) having granted an injunction, dissolves or refuses to enlarge it." The petition for review must be filed "within 15 days of the circuit court's order," and the opposing party "may file a response within seven days . . . unless the court determines a shorter time frame." Code § 8.01-626; *see also* Rule 5A:12A. In resolving the matter, the Court may take such action "as it considers appropriate under the circumstances of the case." Code § 8.01-626. These short time frames enable an aggrieved party to seek review of an order granting or denying an injunction on a faster timetable than would be available through a traditional appeal of a final order.[2]

---

[2] The Code Commission envisioned Code § 8.01-626 as an "extraordinary remedy" to review injunction rulings. Va. Code Comm'n, *Revision of Title 8 of the Code of Virginia*, H. Doc. No. 14, at 347 (1977), https://rga.lis.virginia.gov/Published/1977/HD14. The Code Commission said that the statute left "to the courts" the future relationship between this procedure and the review of an injunction ruling embedded in a final order. *Id.* Before 2015, the Supreme Court limited petitions for review under Code § 8.01-626 to interlocutory injunction orders. *See Omega Corp. of Chesterfield v. Cobb*, 222 Va. 875, 876 (1981). In 2015, however, the Supreme Court amended the petition-for-review procedures to enable review of injunction rulings contained in any final order, effectively superseding *Omega*. *See* Order amending Rule 5:17A and adding Rule 5A:38 (Va. Apr. 10, 2015), https://www.vacourts.gov/courts/scv/amend.html. The General Assembly recently clarified that Code § 8.01-626 may be used to review a trial court's ruling that disposes of either "a preliminary or permanent injunction." 2022 Va. Acts ch. 307. That amendment, effective

The parties start from the mistaken premise that if Code § 2.2-4028 does not permit injunctive relief, then we lack appellate jurisdiction under Code § 8.01-626. They are "conflating the jurisdictional question with the merits of the appeal." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 628 (2009). Code § 8.01-626 unambiguously gives us jurisdiction over a petition for review of an order that "refuses an injunction," and it is undisputed that petitioners are appealing an order that refused the injunctive relief they requested in the circuit court.[3] Appellate jurisdiction "must be determined by focusing upon the category of order appealed from, rather than upon the strength of the grounds for reversing the order." *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996). So even assuming for argument's sake that Code § 2.2-4028 does not authorize injunctive relief, it would not change the fact that petitioners seek review of an order denying injunctive relief. That suffices to establish our appellate jurisdiction under Code § 8.01-626. In other words, the "jurisdictional statute here unambiguously makes the underlying merits irrelevant." *Arthur Andersen*, 556 U.S. at 628.

II.     *Assuming without deciding that Code § 2.2-4028 permits an injunction, petitioners have not demonstrated why an injunction, rather than a stay, is required.*

Having determined that we have jurisdiction over this petition for review, we turn to whether the trial court erred under Code § 2.2-4028 by refusing to enjoin Wegmans from engaging in construction pending judicial review of the agency's decision to issue the VWP

---

July 1, also restores the Supreme Court's direct review of petitions for review of circuit court rulings that are eligible for review under Code § 8.01-626.

[3] Although petitioners' motion for intermediate relief did not use the word "injunction," it sought what all parties agree was injunctive relief—an order directing Wegmans to "suspen[d] all construction activities." At the hearing below on their motion, petitioners characterized their request as a "temporary injunction[]." Here, they call it "intermediate injunctive relief" that would "prohibit[] Wegmans from performing any construction activities." The Commonwealth agrees that petitioners are seeking to "*enjoin construction activities* at the Wegmans site."

Permit. Petitioners insist that the "intermediate relief" allowed by that section permits an injunction; the Commonwealth and Wegmans insist only a stay is permitted, which petitioners have not sought.

At the outset, all parties agree that a meaningful difference exists between a stay and an injunction. We agree, and we find persuasive support for that distinction in *Nken v. Holder*, 556 U.S. 418 (2009); *see also Parasidis v. Karageorge*, No. 0714-15-4, slip op. at 5 n.4, 2015 WL 8193189, at *3 n.4 (Va. Ct. App. Dec. 8, 2015) (noting that the Supreme Court had denied a petition for review under Code § 8.01-626 of an earlier stay in the case, rejecting the petitioner's characterization of the stay as an injunction; quoting the Supreme Court's order as denying the petition because "it did not grant, refuse, dissolve or enlarge an injunction").

In *Nken*, a citizen of Cameroon sought a stay of removal while he appealed the denial of his asylum application. 556 U.S. at 422-23. Subsection (f)(2) of 8 U.S.C. § 1252 provided that "no court shall enjoin the removal of any alien," with certain exceptions. *Id*. at 425 (quoting 8 U.S.C. § 1252(f)(2)). In considering the parties' competing arguments about "whether a stay is simply a type of injunction, covered by the term 'enjoin,' or a different form of relief," the United States Supreme Court noted that "[a]n injunction and a stay have typically been understood to serve different purposes." *Id*. at 428. An injunction "is a means by which a court tells someone what to do or not to do." *Id*. "[A]n injunction is a judicial process or mandate operating *in personam*." *Id*. (quoting *Injunction*, *Black's Law Dictionary* 800 (8th ed. 2004)). "When a court employs 'the extraordinary remedy of injunction,' it directs the conduct of a party, and does so with the backing of its full coercive powers." *Id*. (citation omitted) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "[T]he order is directed at someone, and governs that party's conduct." *Id*.

"By contrast, instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id*. Although a stay "certainly has some functional overlap with an injunction" by "preventing some action before the legality of that action has been conclusively determined," "a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id*. at 428-29. "A stay 'simply suspend[s] judicial alteration of the status quo,' while injunctive relief 'grants judicial intervention that has been withheld by lower courts.'" *Id*. at 429 (alteration in original) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). An order seeking a return of the status quo by temporarily "setting aside" a government action "ordinarily is not considered an injunction." *Id*. at 429-30 (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 279 (1988)). Accordingly, the United States Supreme Court held that 8 U.S.C. § 1252(f)(2) permitted only a stay of the removal decision, not an injunction against removal. *Id*. at 431-32.

While all parties agree that Code § 2.2-4028 would authorize the circuit court to stay the VWP Permit, they disagree about whether it also would authorize an injunction against Wegmans, the permittee. Unfortunately, the plain language of the statute does not squarely resolve that question.

Code § 2.2-4028 permits the circuit court to "issue all necessary and appropriate process to postpone the effective dates or preserve existing status or rights pending conclusion of the review proceedings." The first part of that phrase is broad, allowing "all necessary and appropriate process." That sounds like it might cover injunctions. But the second part suggests

limitations.  Such "process" must be "to postpone the effective dates" or to "preserve existing status or rights."  The reference to "effective dates" appears most naturally to refer back to the term in the preceding sentence: "the effective date of the regulation or decision involved."  The meaning of "preserve existing status or rights" is less clear.  But the last sentence of the statute gives two non-exclusive examples of the type of relief contemplated:

> Actions by the court may include (i) the stay of operation of agency decisions of an injunctive nature or those requiring the payment of money or suspending or revoking a license or other benefit and (ii) continuation of previous licenses in effect until timely applications for renewal are duly determined by the agency.

Code § 2.2-4028.

Petitioners are mistaken that the phrase "decisions of an injunctive nature" means *intermediate relief* of an injunctive nature.  The quoted phrase modifies *agency*; it says that the court can stay "agency decisions of an injunctive nature," not that the court may issue decisions of an injunctive nature.

Reading Code § 2.2-4028 to permit interim injunctive relief is also inconsistent with the provision in the next section governing *final* relief.  Even if a petitioner ultimately succeeds in invalidating agency action on the ground that it is not "in accordance with law," the only thing the court can do is "set it aside" or "remand the matter to the agency for further proceedings."  Code § 2.2-4029.  That limited remedy is consistent with the general nature of judicial review of administrative action.  "Generally speaking, judicial review of administrative orders is limited to determining whether errors of law have been committed."  *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 10 (1942).  Thus, the reviewing court usually "exhausts its power when it lays bare a misconception of law [by the agency] and compels correction."  *Id.*  That is how Code § 2.2-4029 reads.  It does not authorize injunctive relief against the agency, the permittee, or third parties.

In other words, even if petitioners were ultimately successful in this APA challenge, they could not obtain the injunctive relief that they are seeking here on an interim basis: prohibiting construction by Wegmans and, if construction has already begun, requiring it to restore wetlands. If the General Assembly had intended for a circuit court to have *broader* power to issue injunctions on an interim basis than when entering final judgment, one would expect to see that power spelled out in Code § 2.2-4028. Like Congress, the General Assembly does not generally "hide elephants in mouse holes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

Indeed, the Supreme Court of Virginia has admonished courts to be cautious about recognizing private rights of action under Virginia statutes when the General Assembly has not made that intent clear. "[W]hen a statute . . . is silent on the matter of a private right of action, one will not be inferred unless the General Assembly's intent to authorize such a right of action is 'palpable' and shown by 'demonstrable evidence.'" *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 298 Va. 616, 618 (2020) (quoting *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 315 (2016)). One strains to find "palpable" or "demonstrable evidence" in Code § 2.2-4028 that the General Assembly intended for private parties to obtain injunctions as interim relief in an administrative appeal.

Moreover, the fact that the APA gives aggrieved persons the right to institute judicial review of an agency's case decisions and regulations, Code § 2.2-4026, but is silent about entitling such parties to injunctive relief, also undercuts the claim that private injunctive relief is available. As the Supreme Court has explained, "we do not infer a private right of action when the General Assembly expressly provides for a different method of judicial enforcement." *Cherrie*, 292 Va. at 316.

For further support that the interim relief available under Code § 2.2-4028 does not include injunctions against specific persons, Wegmans points us to the parallel provision of the federal Administrative Procedure Act, on which the Virginia statute appears to have been modeled. That section, 5 U.S.C. § 705, which has not been amended since its enactment in 1966,[4] provides that "the reviewing court . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." That is virtually the same language found in Code § 2.2-4028.

The United States Supreme Court interpreted that language in *Sampson v. Murray*, 415 U.S. 61 (1974), strongly suggesting that it does not provide for injunctive relief. The probationary employee there was fired by the General Services Administration and sued to temporarily enjoin her termination while she pursued an administrative appeal. *Id*. at 63. The district court granted "interim injunctive relief," which the D.C. Circuit affirmed. *Id*. Although the Supreme Court ultimately concluded that Congress had not "wholly foreclosed the granting of preliminary injunctive relief in such cases," *id.* at 84, the Court specifically disclaimed § 705 as a basis for that conclusion, *id.* at 68 n.15. The Court said that the legislative history of § 705 "indicates that it was primarily intended to reflect existing law under the *Scripps-Howard* doctrine." *Id*. Under the *Scripps-Howard* doctrine, a federal court has inherent authority to stay an administrative action to preserve the status quo pending appeal. *Id*. at 72-73 & 72 n.25. As *Scripps-Howard* put it, that power is "as old as the judicial system of the nation." 316 U.S. at 17. *Sampson* explained that "the same principles governed the authority of courts charged by statute with judicial review of agency decisions, and . . . the authority to grant a stay exists in such a

---

[4] Act of Sept. 6, 1966, Pub. L. 89-554, 80 Stat. 378, 393 (1966).

court even though not expressly conferred by the statute which confers appellate jurisdiction." 415 U.S. at 74.

The timing of *Sampson* is significant because Virginia enacted the APA the year after *Sampson* was decided. 1975 Va. Acts. ch. 503. In its report accompanying the proposed law, the Virginia Code Commission described the purpose of what is now Code § 2.2-4028.[5] Va. Code Comm'n, *Administrative Process Act*, H. Doc. No. 26, at 17, 29 n.58 (1975), https://rga.lis.virginia.gov/Published/1975/HD26. It explained that "[t]his section summarizes the recognized authority of reviewing courts to grant temporary relief from contested agency action but adds language to prevent [the] improvident exercise of such authority." *Id*. at 29 n.58.[6] By stating that the purpose of this provision was to "summarize[]" the "recognized authority" of courts the year after *Sampson*, the Code Commission suggested that this provision likewise codifies the inherent power of a reviewing court to stay agency action pending judicial review. *Sampson*'s interpretation of § 705 earns some consideration here because when a Virginia statute is modeled on federal law, "the federal decisions addressing the issue," though

---

[5] The provision now codified as Code § 2.2-4028 was originally codified as former Code § 9-6.14:18. 1975 Va. Acts ch. 503. The General Assembly has altered the original text only once, when Titles 2.1 and 9 were recodified in 2001. 2001 Va. Acts ch. 844. The Code Commission's report detailing the changes between former Code § 9-6.14:18 and Code § 2.2-4028 explained that the amendments, which merely modernized language and changed statutory cross-references, were "[t]echnical corrections only." Va. Code Comm'n, *Recodification of Title 2.1 and 9 of the Code of Virginia*, H. Doc. No. 51, at 372 (2001), https://rga.lis.virginia.gov/Published/2001/HD51.

[6] That protective language consists of the requirements that the court find an "immediate, unavoidable, and irreparable injury" and "probable cause . . . to anticipate a likelihood of reversible error." Code § 2.2-4028.

"not controlling in the construction of the Virginia statute, are nevertheless 'highly persuasive.'" *Fernandez*, 298 Va. at 619 (quoting *Werth v. Fire Cos.' Adjustment Bureau*, 160 Va. 845, 856-57 (1933)).

Still, we see some flaws in the federal analogy. By saying that § 705 was "primarily" intended to codify the stay powers recognized in *Scripps-Howard*, 415 U.S. at 68 n.15, *Sampson* may have left the door open to argue that § 705 might in some circumstances allow an injunction. In fact, federal courts in more recent years have divided over that question. *Compare Labnet Inc. v. U.S. Dep't of Labor*, 197 F. Supp. 3d 1159, 1167 n.3 (D. Minn. 2016) ("[W]hen a party challenges a regulation under the Administrative Procedure Act, the appropriate relief is not a preliminary injunction but rather a stay."), *with E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1119 n.20 (N.D. Cal. 2018) (finding it "well established that courts may issue preliminary injunctions, as an alternative to stays, in APA challenges"), *aff'd on other grounds*, 993 F.3d 640 (9th Cir. 2021) (denying en banc review but amending the panel opinion); *see also* Frank Chang, *The Administrative Procedure Act's Stay Provision: Bypassing Scylla and Charybdis of Preliminary Injunctions*, 85 Geo. Wash. L. Rev. 1529, 1546-47 (2017) (noting "[c]onventional wisdom" after *Sampson* "that § 705 authorizes a stay," not an injunction, but that "the text of § 705 seems to create a choice between a stay and an injunction").

We need not definitively resolve that debate here. We will assume for argument's sake that in an extraordinary case, Code § 2.2-4028 might allow a court to grant an injunction as interim relief. But given the serious doubts about the existence of that power, we are confident that such extraordinary relief should not be awarded if a traditional "stay" of the agency's action would suffice "to prevent immediate, unavoidable, and irreparable injury." Code § 2.2-4028.

In this case, however, petitioners have submitted nothing to show why a stay of the VWP Permit would fail to address any concern that they have about construction in wetlands. Under Virginia law, a permittee like Wegmans must possess a valid VWP permit in order to, among other things, "[e]xcavate in a wetland" or conduct "[n]ew activities that cause significant alteration or degradation of existing wetland acreage or functions." Code § 62.1-44.15:20(A)(1), (2)(d). Without a valid VWP permit, conducting such activities is "unlawful." Code § 62.1-44.15:20(A). Petitioners fail to explain why a stay of the permit's effectiveness under Code § 2.2-4028 would not provide all the relief they need, making an injunction against Wegman's unnecessary. Nothing in the record suggests, for instance, that the agency would act in defiance of a stay or that Wegmans would proceed with construction without the necessary permitting.

Petitioners do not persuade us that it was "impractical" to seek a stay because the VWP Permit had "an effective date the morning of the next business day following the after-business hours nighttime decision of the Board." For one thing, they presented no evidence as to *when* construction was scheduled to start. The petition for review suggests that construction has yet to begin, as petitioners requested that "*if*" Wegmans has commenced work, "*then* Wegmans should be required to restore" any damaged wetlands. Pet. for Rev. 20 (emphasis added). In fact, the trial court found that "Wegmans must secure numerous other permits," and petitioners did not attempt to show that the VWP Permit here was the last approval needed for land-disturbing activities to begin. For another thing, agency action is usually final when an aggrieved party seeks judicial review. Under petitioners' reasoning, such finality alone would be enough to skip the normal course of seeking a stay of agency action, enabling a private party to seek injunctive relief against the permittee, a third-party, or the agency itself in the guise of "intermediate relief"

-14-

pending judicial review.  We see nothing in the APA to suggest that the General Assembly

intended for Code § 2.2-4028 to be stretched that far.

Because petitioners have failed to demonstrate that a stay would be insufficient, they are

not entitled to the extraordinary injunctive relief requested here.

CONCLUSION

The petition for review is denied.

The Clerk will publish this order and certify it to the trial court.

A Copy,

Teste:

A. John Vollino, Clerk

By: *original order signed by a deputy clerk of the Court of Appeals of Virginia at the direction of the Court*

Deputy Clerk